UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

UNITED STATES OF AMERICA,

                Respondent

against

MARTIN SMELING NUNEZ,

                Defendant-Petitioner
-----------------------------------------------------------------x

**AFFIDAVIT IN SUPPORT OF PETITION FOR WRIT OF ERROR CORAM NOBIS**

**Case: 08-CR-00709 (DLC)**

MARTIN SMELING NUNEZ, being duly sworn deposes and says:

1. I am the defendant in the above entitled criminal case.

2. I make this Affidavit in support of my petition for a Writ of Error Coram Nobis to vacate my conviction and my plea of guilty.

3. I was born in the Dominican Republic.

4. At the age of 11, I lawfully entered the United States in or about 1992 and resided with my mother and sisters.

5. On January 11, 2008, prior to my naturalization as a U.S. citizen, I filled out a form where I answered in the negative as to whether I had been or was engaged in any criminal acts for a time period prior to that date.

6. In January 11, 2008 I was granted citizenship.

7. On or about July 2, 2008, I was arrested and charged with a conspiracy to distribute heroin which were alleged to have occurred November 2007 to June of 2008.

8. After being released on a bail package, I retained the services of John Garzon, Esq., to represent me.

9. At our first meeting, I was very concern with my immigration status and I immediately explained to Mr. Garzon that I had just been naturalized on January 11, 2008 and that my family,

1

my three (3) children and sisters are all citizens, and my parents were permanent residents. My entire family resided in Brooklyn. Furthermore, I told him that I am employed as a carpenter and I am a member of a local union. He told me that "you're a citizen, there are no immigration problems to be concerned with."

10. I did provide Mr. Garzon with a copy of my Certificate of Naturalization either at my first meeting or at our next meeting.

11. My first language is Spanish, that combined with the fact that I only completed the 10th grade of High School, my reading and understanding of English at that time was limited.

12. Mr. Garzon spoke to me in Spanish basically at all times, except in front of the Court.

13. In my pre-plea conversations with Mr. Garzon, I inquired several times about possible immigration consequences of any plea, he assured me each and every time that I had nothing to be worried about because I was a citizen.

14. On the day I signed the plea agreement Mr. Garzon gave me the same advice, "I'm a citizen and immigration is not a problem." I did not read the agreement as Mr. Garzon explained it to me. I had not gone over specific dates with Mr. Garzon.

15. The same day I signed the agreement we appeared in front of the Court. I was scared, I listened and relied on my attorney's advice.

16. I listened to the Court and in my factual allocation I admitted to both being involved in a "conspiracy of heroin" and sale of heroin and crack. I didn't know the specific dates for each; but was informed that at that point of the dates. I did admit my wrong doing.

17. I interviewed with U.S. Probation Department, and was before the Court on February 6, 2009 for sentencing.

18. The Court sentenced me to 57 months with five (5) years of supervised release.

19. At no time during my plea or sentence was I ever warned of immigration consequences by either my attorney or the Court.

20. Mr. Garzon never advised me of possible "denaturalization proceedings" due to my plea. In fact, I never heard of that word until years later. (2017)

21. While serving my sentence, my appellate attorney, Brenner, brought a §2255 action alleging ineffective assistance of counsel due to Mr. Garzon's failure to submit a downward departure letter as scheduled by the Court. This was denied.

22. Later, my sentence was first reduced to 48 months, and then reduced again to approximately after 43 to 44 months where upon I was released.

23. I fully served my sentence and upon my release, I resided with my family and immediately started work as a carpenter with my previous employer (Gilbert Displays).

24. Presently, I have five children and am gainfully employed (A.P. -age 13, MN – age 12 years old, YT -age 11, A.T. - age 4, and T.N.M. – age 3). My son MN suffers from autism and cannot dress himself.

25. At some point in June 2017 – While in Pennsylvania, my wife received a letter advising that a denaturalization action was pending (since 2013, I have lived with my wife and children in Pennsylvania). My wife is presently a permanent resident.

26. My reading and vocabulary skills are limited and after conferencing with numerous persons and friends I realized that an attorney was necessary. I interviewed with numerous attorneys who would not take my case -most stating they could do nothing for me.

27. On or around October 2017, I retained Mr. Barra and he informed me that it was a denaturalization matter leading to deportation. (Case # 16 CV 3485)

28. Mr. Barra, responded to the complaint and then addressed the government's motion for judgment on the pleading. The government's motion was eventually denied.

29. Mr. Barra did advise me that he believed I was the victim of malpractice by Mr. Garzon.

30. Mr. Barra never advised me that I should try to have the plea vacated or that I should file a Petition for a Writ of Error Coram nobis.

31. I first heard that the plea should be vacated and that a petition for a writ as mentioned above was from Mr. Zaloba – my present counsel.

32. I had trusted and relied upon Mr. Garzon's advice when I entered my plea.

33. If Mr. Garzon had not affirmatively misadvised me on numerous occasions that my plea would have no immigration consequences because I was a citizen, I would not have entered such a plea.

34. My present understanding is that the pre-sentence report alone would have alerted a competent attorney that an immigration problem had existed.

35. At the very least, Mr. Garzon should have alerted the Court at sentencing that an immigration and deportation problem existed and I would have insisted that plea be vacated. It appears that Mr. Garzon either didn't know or he concealed immigration/deportation problems from both myself and the Court.

36. I would not have agreed to a plea which could have caused me to lose my citizenship and be deported (this plea and its language is being used in my denaturalization case against me).

37. If I were correctly advised that if I admitted to any action prior to my naturalization of January 2008, that this would cause deportation, I would not have admitted to those facts. If properly advised, I would have requested that Mr. Garzon negotiate a plea that did not require me to admit to crimes prior to January 11, 2008, whereas there were a number of sales alleged to have occurred after that date.

38. I believe that if Mr. Garzon had been competent, he would have raised the matter with the prosecution and been able to negotiate a plea where I did not have to admit to acts occurring before January 11, 2008.

39. I would never have entered a plea where I could not live with my children and family – this is my entire world. I could not leave my children. I would have insisted upon a different negotiated plea or proceeded to trial.

4

40. Mr. Garzon should never have concealed the immigration consequences of my plea from both myself and the Court. If I had known that he had affirmatively misadvised me I would never have taken the plea, and would have either had Garzon vacate the plea or sought different counsel immediately to vacate the plea and negotiate a plea with no direct immigration consequences or proceed to trial.

41. As a result of Mr. Garzon's affirmatively misadvising me, I was unable to make an informed voluntary and knowing plea.

42. Based upon the above, I submit that I am entitled to the relief requested in this petition.

MARTIN SMELING NUNEZ

Sworn to before me this 24th

Day of October  2019.

Maharanie Prashad

Notary Public

MAHARANIE PRASHAD
Notary Public, State of New York
No. 01PR6059216
Qualified in Queens County
Commission Expires 05-29-20