UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

UNITED STATES OF AMERICA,

                                        Respondent


            against                                         Case: 08-CR-00709 (DLC)



MARTIN SMELING. NUNEZ,

            Defendant-Petitioner

------------------------------------------------------------------------x



**PETITIONER'S MEMORANDUM OF LAW**

EDWARD ZALOBA, ESQ.,
Attorney for Petitioner Nunez
118-21 Queens Boulevard, Ste. 504
Forest Hills, NY  11375
718-261-3000
718-793-0385 fax
ezalobalaw@aol.com

1

# TABLE OF CONTENTS

Page

Preliminary Statement…………………………………………………………3

Issues Presented……………………………………………………………3

Statement of Facts…………………………………………………………4

Summary of Argument………………………………………………………7

Argument……………………………………………………………………8

POINT I.…………………………………………………………8

POINT II.………………………………………………………10

Conclusion…………………………………………………………………17

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

UNITED STATES OF AMERICA,

<table>
<tr><td>Respondent</td><td>**MEMORANDUM**</td></tr>
<tr><td>against</td><td>Case: 08-CR-00709 (DLC)</td></tr>
</table>

MARTIN SMELING NUNEZ,

Defendant-Petitioner

-----------------------------------------------------------------------x

## **PRELIMINARY STATEMENT**

This action is a petition for a writ of error coram nobis to vacate the conviction and plea of guilty of Martin Smeling Nunez entered on October 22, 2008, and February 6, 2009, respectively, sentencing him to fifty-seven (57) months of incarceration and five (5) years of supervised release on Count 1 of the indictment. (Denise L. Cote).

## **ISSUE PRESENTED**

1. Whether Nunez waived his right to bring a petition for coram nobis on the grounds of inadequacy of counsel by the waiver in his plea agreement?

2. Whether the affirmative misadvise given Nunez by his attorney concerning the consequences of his plea of guilty on his status as a naturalized citizen requires the grant of the petition?

3. Whether Nunez should be granted a hearing on his claims?

## STATEMENT OF FACTS

Martin Smeling Nunez was born in the Dominican Republic. (Exhibit A).  He lawfully entered the United States in 1992 at the age of 11 years old.  On January 11, 2008, Nunez filled out an N-455 prior to his naturalization.  In this form he answered in the negative a question about whether he had been engaged in any criminal activity during the time of the application prior to naturalization (Exhibit A – Par. 5).  On January 11, 2008, Nunez was granted citizenship (Exhibit B – Certificate of Naturalization).

On July 2, 2007, Nunez was arrested and charged with conspiracy, possession to distribute heroin, allegedly occurring between November 2007 and June 2008. Initially, the petitioner was represented by attorney appointed by the Court.  The petitioner was released upon a bail package being agreed upon.  In mid July, Nunez retained John Garzon, Esq., to represent him.   Within a number of weeks, Nunez was arraigned on an indictment on or about August 7, 2008.   The indictment charged Nunez with Conspiracy allegedly starting in November 2007 followed by three sales occurring from January 10, 2008, January 25, 2008 and June 23, 2008. (Exhibit C – Indictment)

At the initial meeting between Nunez and attorney Garzon,  Nunez  informed  Garzon of his concerns with immigration that he had just been naturalized on January 11, 2008 (Exhibit A – Par. 9).  He explained that his entire life is here, his 3 kids who were citizens, and his mother and father and sisters.  Furthermore, he had a job as a carpenter with Gilbert displays and was a member of the carpenter's union.   Petitioner provided Garzon a copy of his Certificate of Naturalization (Exhibit A – Par. 10).   Garzon informed Nunez that because he was a citizen, he did not have to worry about any immigration consequences  (Exhibit A -Par. 9).    At a later conference between Garzon and Nunez, they discussed the plea and sentence.  Nunez once

again inquired whether there would be any immigration problem by his taking the plea, Garzon informed him once again that there would be no immigration consequences because Nunez was a citizen.   All of the conversations between Nunez and Garzon were in Spanish and Garzon explained what the plea agreement was in Spanish (Exhibit A-Par. 12).   Nevertheless, Garzon informed the Court that Nunez spoke English well (Exhibit D-plea P.2  L.7-10).   It should be noted that Nunez had a 10th grade education (Exhibit A- Par. 11).   Based upon Garzon's advise that there were no immigration consequences and that his citizenship would not be jeopardized, Nunez first signed the plea agreement and then entered a plea of guilty on October 22, 2008 before her Honor Denise L. Cote.   Nunez guilty plea was to a conspiracy starting in November 2007 and a sale on January 10, 2008. (Exhibit D -Plea Minutes).

During the plea, Nunez stated that he was a citizen.  Although the indictment had sales occurring after petitioner became a citizen, Garzon had petitioner, Nunez, plea to conspiracy and a sale that occurred prior to Nunez becoming a citizen (Exhibit D Pgs. 12-13).   Nunez admitted to crimes as alleged and the Court accepted his plea.   Garzon did not alert the Court that there were immigration concerns.   The Court did not give any warnings concerning immigration and deportation concerns.   The plea as taken had a direct impact on Petitioner's immigration status and would lead to deportation.   Sentencing was set for February 6,2009. Petitioner was interviewed by U.S. Probation Office and a Presentence Investigation Report (PSR) was prepared.

The Petitioner's Sentencing Report (Exhibit  E)  clearly indicates that  the petitioner has significant family ties here in the United States as his children (3) and their  mother,  his mother and father and his sisters reside here (Exhibit E - P. 10-11).   In addition, petitioner's

employment with Gilbert Display and membership in United Brotherhood of Carpenters and Joiners of America, Local Union 1536 was verified (Exhibit E P.12).   Furthermore, Nunez financial support of his children was corroborated.   The Petitioner's Sentencing Report indicated that Nunez had no prior criminal convictions.  (Exhibit E – P. 10)

Of great importance, the Petitioner's Sentencing Report clearly indicates that Petitioner became a naturalized citizen on January 11, 2008 (Exhibit E  P 10-11) .   Hence, Petitioner's plea would violate the terms and oath set forth in his naturalization process causing petitioner to be denaturalized and deported.  Attorney Garzon never discussed the above and continued to assure the petitioner that there would be no immigration consequences.

On February 6, 2009, at petitioner's sentencing, Attorney Garzon never alerted either the Court or Petitioner of the dire immigration consequences of Nunez's plea (Exhibit F - Sentencing minutes).  The Assistant United States Attorney (AUSA) did not bring the negative immigration consequences of the plea to the Court's attention.   Nunez was sentenced to 57 months.  Nunez began his sentence on or about March 20, 2009.

The petitioner filed a §2255 action alleging ineffective assistance of counsel based upon Garzon's failure to submit a downward departure letter setting forth petitioner's ties to family and community (Exhibit A- Par 21).   The Court denied this application. Thereafter, the petitioner' s sentence was reduced to approximately 44 months.  When released, petitioner returned to his previous carpentry employment.

He had trusted his attorney's advise, he had served his time, and believed that this chapter in his life was behind him.  His family grew.  He has two (2) more children, a total of 5, and he continues to provide for all (Exhibit A- Par. 24)  On or about June 17, 2017, Nunez was served in Pennsylvania with a complaint, where the government sought denaturalization based

upon his supposed falsehoods about his criminal conduct in his citizenship application (Exhibit A- Par 25). He returned to New York and looked for an attorney to retain. On or about October 17, 2017, he retained Thomas Barra, Esq. (Exhibit A- Par 27) (Exhibit G – Barra Affirmation)

Barra set forth an answer and thereafter successfully defended the government's 12(c) motion on the pleading. Barra however, was not familiar with this area of law (Exhibit G Par. 6). Earlier this year, Barra became employed with the Legal Aid Society and was unable to make the July Court appearance on the denaturalization case and the Court adjourned to September 12, 2019 for his appearance. I met Mr. Nunez and was retained on September 10, 2019 and appeared in Court on September 12, 2019. While retrieving the file from Mr. Barra, he informed me that he was unaware that the plea should be vacated and furthermore, he did not know what a petition for Writ of Error Coram Nobis was. (Exhibit G -Par 14,15).

## SUMMARY OF ARGUMENT

Nunez entered into a plea agreement by which he agreed that by pleading, he waived the right to appeal or collaterally attack his sentence if, said sentence was within the negotiated guidelines. Nunez's request to vacate his plea of guilty and conviction is based upon the inadequacy of his counsel. Thus, this Court has jurisdiction to proceed with the petition.

This misadvise given by counsel regarding the effect of Nunez's plea of guilty on his status as a naturalized citizen rendered his performance deficient under Strickland v. Washington, 466 US 668 (1984). Nunez's claim is not foreclosed by the retroactivity decision of Chaidez v. United States 568 or 133 S. Ct. 1103(2013) because counsel did not merely fail to advise Nunez, but affirmatively misadvised him about the impact of his plea on his

naturalized citizenship, <u>Kovacs v. United States</u>, 744 F3d 44(2d Cir., 2014), U.S v. Rodriguez 16 CV 3739 2d Cir. 2018).  Nunez suffers continuing legal consequences of the guilty plea.


## ARGUMENT

### POINT I

### THIS COURT HAS JURISDICTION TO GRANT THE RELIEF REQEUSTED

Nunez entered into a plea agreement.  In the plea agreement, he agreed to waive his right to appeal or collaterally attack his sentence, if that sentence was no greater than the sentence agreed upon in the agreement.

Nunez's petition for a writ of error coram nobis is based upon the inadequacy of counsel, John Garzon, in that he affirmatively misadvised him regarding the immigration consequences of his plea and thus made him vulnerable to the government bringing a denaturalization action, which it has and which is pending.

The case law makes clear that where the request for relief is based upon claim of inadequacy of counsel regarding the advise of counsel to plead guilty, the waiver clause in the plea agreement does not prevent the court from obtaining jurisdiction and authority to grant the relief requested. See <u>Campusano v. US</u> 442 F3d 777 (2 Cir. 2006) (a defendant does not sign away his right to the effective assistance of counsel).  Also see <u>United States v. Reap</u>, 391 Fed. Appx. 99 (2d Cir. 2010); <u>Parisi v. United States</u>, 529 F3d 134, 138 (2008), <u>United States v. Couto</u>, 311 F3d 179, 188 (2d. Cir., 2002<u>), United States v. Da Cai Chen</u>, 127 F3d 286 (2d Cir. 1997); <u>United States v. Torres,</u> 129 F3d 710 (2d Cir. 1997), <u>United States v. Cabrera</u>, 563 Fed Appx. 861 (2d Cir. 2014). Also see <u>Unites State v. Henderson</u>, 72 F3d 463 (5th Cir 1995), <u>United States v. Attar</u>, 38 F3d 727, 732 (1994).  In addition, "a waiver of appellate or collateral

attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, here the plea agreement "Frederick v. Warden Lewisburg Correctional Facility, 308 F3e, 192, 195 (2nd Cir. 2002).

In this case there can be no doubt that the affirmative misadvise given by counsel that because Nunez was a citizen there could be no adverse immigration consequences renders his plea involuntary and unknowing and the waiver of appellate rights in the plea agreement does not foreclose this Court from rendering a decision on the petition. Similar erroneous advice has been held to fall below an objective standard of reasonableness. Kovacs v. United States, 744 F3d supra at 50 (2d Cir. 2014), Ventura v. Meachum, 957 f2d 1048, 1058 (2d Cir., 1992), Strickland v. Washington, 466 US 668 (1984). Accordingly, this Court has jurisdiction to proceed despite the waiver.

So too, the enforcement of the waiver of the right to attack the conviction and sentence would result in a fundamental manifest injustice. Hill v. United States, 368 US 424, 428 (1962). To enforce the waiver here would mean that a United States citizen is subject to losing his citizenship and being deported just because his attorney gave him absolutely wrong advice as to the immigration consequences of his plea. Given the nature of the charges and the dates of the occurrence, there can be little doubt that if counsel had known the law, he could have negotiated a plea which did not involve Nunez admitting to criminal acts committed before January 11, 2008. An allocution sufficient to satisfy the requirements of the plea without exposing Nunez to denaturalization and deportation would have been simple to construct. Further, after the plea of guilty was taken and before sentencing, Garzon should have remembered or learned that Nunez was a citizen. Even if this was the first he learned of his client's citizenship (the evidence is that he was so aware prior to the plea), he should then

have been aware of the consequences of the plea on Nunez's citizenship and should have advised him to move or withdraw the plea before sentencing.

The petition is timely, in that there is no statute of limitations for coram nobis petitions. Kovacs v. United States, supra at 49, Foont v. United States, 93 F3d 76, 79 92d (Cir., 1996), United States  v. Kwan, 407 f3d 1005, 1012 (7th Cir., 2005).

## POINT II

### THE AFFIRMATIVE MIDADVICE GIVEN BY COUNSEL TO NUNEZ CONCERNING THE IMMIGRATION CONSEQUENCES OF HIS PLEA OF GUILTY AND COUNSEL'S FAILURE TO EFFECTIVELY NEGOTIATE A PLEA OR ALLOCUTION WHICH WOULD NOT AFFECT HIS CITIZENSHIP CONSTITUTE INADEQUACY OF COUNSEL UNDER THE SIXTH AMENDEMNT TO THE CONSTITUTION OF THE UNTIED STATES AND HIS CONVICTION AND PLEA OF GUILTY SHOULD BE VACATED.

The transcript of the plea and sentencing proceeding demonstrate that counsel for Nunez made little or no effort to determine Nunez's actual immigration status or to investigate the potential consequences of a guilty plea.  In fact, in both the plea agreement and the plea counsel had Nunez allocute to those acts which directly affect his naturalization despite the facts that other acts could have been negotiated and ultimately plead to which would not have a negative immigration impact.  Unfortunately, counsel affirmatively advised that because Nunez was a citizen, there was no immigration/deportation for him to be concerned with  – he was obviously wrong.

Counsel should have been aware that Nunez was just naturalized and that some of the acts alleged in the indictment occurred just prior to his naturalization.  Nunez stated that he both informed Garzon of his date of naturalization and provided him a copy of his Certificate of Citizenship (Exhibit A Par 9&10) and see (Exhibit B).  Being aware that he was a citizen and that he had become one in January 11, 2008, Garzon should have ascertained what Nunez had said in his application for citizenship and understood the implications and effect of the plea

10

allocution, as negotiated by him, on the possibility of denaturalization.  This especially is true where the date of the first sale allegedly occurs on January 10, 2008, one day before he January 11, 2008 naturalization.  Counsel did none of these things and, instead, he reassured Nunez on numerous occasions that as a citizen he could not be deported and there were no immigration concerns. Instead Garzon accepts the first two occurrences or acts in indictment (Exhibit C) which directly would lead to immigration consequences where he could have had petitioner plea to sales occurring after January 11, 2008.   At the very least, after reading the Pre Sentence Report prior to sentence Garzon should have advised Nunez to move to withdraw his plea before sentence was imposed.  His failure to do so constituted inadequacy of counsel.

### A.    Coram Nobis is the appropriate remedy for Nunez's Claim:

In  Kovacs v. United States, *supra* at 49, the Second Circuit states that coram nobis is "…an extraordinary remedy" (Quoting from United States v. Morgan, 346 U.S. 502, 511 (1954) and is available only when 1) there are circumstances compelling action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from the conviction that may be remedies by the writ.  Nunez meets all these requirements.  See 28 U.S.C. Sec. 1651 (a).

**1.**    There are compelling reasons to grant the writ to achieve justice.

Nunez has been a U.S. citizen since January 11, 2008 (Exhibit A – Par. 6).  He has fully served his sentence and is no longer in custody therefore, he is barred from seeking relief under 28 U.S.C. 2255 (Federal conviction).  Thus, coram nobis is the only remedy available to him to correct the injustice of him losing his citizenship and being deported.  Nunez has a sixth

Amendment right to counsel, which extends to the plea bargaining process. Kovacs, *supra* at 49 (quoting from Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). The Second Circuit held that inadequacy of counsel is a compelling reason for granting the writ. (See Chabra v. United States, 720 F3d 395, 406 (2d Cir., 2013). Also see U.S. v. Rodriguez, 16 CV 3739 2nd Cir. 2018. To establish inadequacy of counsel, it must be shown that the advice given was erroneous and absent that advice, a plea would not impact immigration status could reasonably have been negotiated. Kovacs, *supra* at 5 and Rodriguez, *supra* at 9. Nunez satisfies these requirements. The advice his lawyer gave him was wrong and it is obvious that a plea or, at the least, an allocution not having consequences on his immigration status could reasonably have been negotiated. Given the fact that this would be his only criminal conviction, that his three (3) children, Nunez's sisters and his mother and father (permanent residents) all live here, and that he was gainfully employed as a carpenter providing for all of his children (See Exhibit A – Par 9 & Exhibit E P. 10 & 11), it is difficult to believe that such a plea or allocution could not have been secured. It would be extremely unjust to permit counsel's errors to cause Nunez to be stripped of his citizenship and deported.

Under Strickland v. Washington, supra, for Nunez to establish that his counsel was inadequate, he must show 1) Counsel's performance "fell below and objective standard of reasonableness" See Hill v. Lockhart, 474 US 52, 57-58 (1985) and See U.S. v. Rodriguez ID; 2) he suffered prejudice from the inadequate representation in that he is now subject to denaturalization and deportation; and 3) except for the misadvice, he would not have accepted the plea and that there is a reasonable probability that had Garzon been aware that he had given misadvice, he could have correctly negotiated a plea or allocution that would not have subjected Nunez to denaturalization and deportation and that would have been accepted by

12

the government and the court. <u>Lafler v. Cooper</u>, *supra* at 1385 and <u>U.S. v. Rodriguez ID.</u>   At the very least, he should have moved to withdraw Nunez's plea before sentence. <u>Kovacs v. United States,</u> *supra* at 49-52, <u>United States v. Couto</u>, 311 F3d 179 (2d Cir., 2002) and see <u>Rodriguez</u> <u>ID</u>.   The facts and circumstances in the case at bar meet this standard.

In <u>Padilla v. Kentucky</u>, 559 US 356 (2010), the Supreme Court held that, despite the fact that immigration consequences had been traditionally be viewed as collateral consequences of a plea that did not require counsel to properly advise the client regarding those consequences, the failure of counsel to so advise the client constituted inadequacy of counsel under Strickland.

In <u>Chaidez v. United States</u> 568 U.S. __, 133 S. Ct. 1103(2013), the Supreme Court held that Padilla was not to be applied retroactively to cases where the conviction became final before Padilla was decided.   Left open in <u>Chaidez</u> was the issue of whether the affirmative misrepresentation of the consequences of a plea on immigration status should be treated differently as far as retroactively from mere failure to give proper advice.   The Second Circuit has answered that question in <u>US v. Rodriguez</u> and <u>Kovacs v United States</u>, supra.   In <u>Kovacs,</u> the court relied on the fact that in 2002, in <u>Couto v. United States</u>, the Second Circuit held that affirmative misrepresentation as to immigration consequences fell outside the range of professional competence.   In <u>Kovacs</u>, the court held that even thought Kovacs' conviction became final a year before the <u>Couto</u> decision, because the Couto rule was so clearly indicated by prior cases that no judge could find such misadvice to be objectively reasonable. The <u>Kovacs</u> court made clear that misadvice by counsel was a basis for a finding of inadequacy of counsel before <u>Padilla</u> was decided and presented a different basis for relief. In <u>U.S. v. Rodriguez,</u> a case on point with the case at bar, the Rodriguez attorney affirmatively

misadvised Rodriguez by telling her she was a citizen and that she did not have to worry about immigration consequences.  Rodriguez entered a plea where her allocution included crimes which would violate the provisions in her citizenship application thus subjecting her to denaturalization and deportation.  The Rodriguez Court held that counsel advise that she need not worry about immigration consequences... fell below an objective standard of reasonableness. Id. Also citing Kovacs, 744 F3d at 5.   As in Rodriguez, the conviction in the case at bar became final long after Couto was decided.  The clear holding in Kovacs and Rodriguez entitles Nunez to have his conviction and plea set aside.

The Supreme Court has still not decided the matter of retroactivity of claims of affirmative misadvice.  Interestingly, recently, the Supreme Court denied certiorari in three cases out of Texas which raised the issue. Gomez v. Texas, 13-1036, Luna v. Texas, 13-984, Ibarra v. Texas, 13-999, 134 S.Ct. 1908, 2872 (6/30/14).   Apparently, the government has not sought certiorari in Kovacs.  Therefore, the holding in Kovacs and Rodriguez are good law and binding in this District.   In addition, the ineffective assistance of counsel has rendered Nunez's guilty plea involuntary, Ventura v. Meechum 987 F2d 1048, 1058 2nd Cir. 1992, as said plea was not made intelligently and voluntarily, US v. George 869 F2d. 333, 335, 336, 7th Cir. 1972.Accordingly, the writ of coram nobis should be granted.

In addition, Mr. Nunez has suffered prejudice as a result of his attorney's ineffective assistance.  In the first instance, his attorney failed to attempt to negotiate a plea which had no impact upon his immigration status.  In fact, although there were other acts alleged in the indictment which would have sufficed, Garzon had Nunez plea to those acts which occurred before his naturalization which would directly violate the provisions of his naturalization.  It does not appear that the attorney even attempted to negotiate a plea with no immigration

consequences.   Obviously, this has caused Nunez great prejudice as it subjects him to denaturalization and deportation.   In addition, Mr. Garzon did not raise the immigration concerns to the Court at the plea or at sentencing.   This denied the Court the opportunity to attempt to remedy the matter and thus has prejudiced the Petitioner.   See Sasonov v. U.S., 575 F. Supp 2d 626 2008 at 637, 639.   Furthermore, the Second Circuit has recognized that in certain cases the severity of immigration consequences "may be enough to allow petitioner to negotiate a more favorable plea agreement with the government". Kovacs, following Sasonov. Nunez could have reasonably obtained either a more favorable plea or had at the very least demonstrate that there is a probability sufficient to undermine the confidence in the outcome. See Thomas v. Varner, 428 F.3d 491, 502 3rd (Cir. 2005).

The contemporaneous facts clearly indicate that Nunez placed great importance on his citizenship, his children are citizens, his wife is a permanent resident, and sisters are citizens and his parents live here and are presently citizens.   In addition, Nunez was employed as a carpenter and member of Local Union enabling him to provide for his children and family. Clearly, for counsel's ineffective assistance, this writ of coram nobis should be granted.

**2.**    Sound reason Exist for Nunez not taking action earlier.

Nunez was advised by his attorney that he was a citizen and there would be no consequences as a result of his plea.   Mr. Nunez served his sentence and there was no reason for him to believe there were any immigration concerns until June 2017 when he received a letter indicating there was a complaint - that he was facing denaturalization/deportation.   He interviewed a number of attorneys – most of them stating they could do nothing for him.   In October, he retained the services of Mr. Thomas D. Barra, Esq.   Mr. Barra submitted a response to the complaint and then successfully responded to the government motion for

judgment on the pleading which was decided on or about March 21, 2019.  I met Mr. Nunez on September 10, 2019. At this time, I became aware that Mr. Barra had not appeared on the last date in July before Judge Scanlon and the matter was set for a status conference on September 12, 2019 for Mr. Barra to appear.   At some point in the first half of 2019- Mr. Barra had accepted a job with the Legal Aid Society and was unable to continue to represent Mr. Nunez and did not appear in July of 2019.

Upon discussing Mr. Nunez's matter with Mr. Barra, he indicated he was neither aware that the plea should be vacated nor had he ever heard of a Petitioner for a Writ of Error Coram Nobis (Exhibit G Par 14).   In Mr. Barra's affirmation, he clearly states that this is not his field and that he attempted to help a friend's friend (Exhibit G Par. 6&9).  This time should not be attributed to Mr. Nunez's as causing delay because Nunez assumed Mr. Barra was proceeding in a competent manner.  See Mr. Barra's Affirmation (Exhibit G -3 pages).

The Petitioner has shown justifiable reasons for his delay.  The Kovacs Court in finding the delay justified did note that it would be improbable whatever attorney was consulted to properly know about coram nobis as it is "arcane as it is ancient". Kovacs at 59.  In the case at bar, the Petitioner acted reasonable in placing trust and reliance with Mr. Barra.  And Mr. Barra's affirmation clearly points out he was unaware of the writ but did note that Nunez was subject to malpractice (Exhibit G Par. 16).

No attorney prior to your affirmant, present counsel, advised Nunez of the writ of error coram nobis as possibly remedy.   Nunez would gain no tactical advantage for delaying in bringing the petition.  The law does not require that the defendant challenge his conviction at the earliest opportunity but rather only require that there be sound reason for the delay.  U.S. v. Kwan 407 F3rd 1005 (9th Cir. 2005).  Given the above circumstances, Nunez has provided

sound reasons for any delay and his petition should not be denied on that ground.   See

Kovacs *supra* at 54, United States v. Akinsade 686 F3d 248, 252 (4th Cir. 201).

  3.   Nunez continues to suffer adverse consequences from his plea of guilty.

The denaturalization case pending in the Eastern District of New York is obviously a

continuing consequence of his plea (16 cv 3485).  In said matter, the government is using both

the plea and sentence minutes/transcripts against the Petitioner Nunez.  If the writ is granted

and the plea is vacated the minutes will be inadmissible. See United States v. Mergen 06 CR-

352 EDNY 2010.

  **B.**   At the least, Nunez is entitled to a hearing on his claim:

It is submitted that the record, as it stands, is more than adequate to support the grant of the

writ.   If, however, this Court believes that the record is not adequate to rule on the petition, it

should grant and hold a hearing on the matter.

## CONCLUSION

THE COURT SHOULD GRANT THE PETITION FOR A WRIT OF ERROR CORAM NOBIS

OR IN THE ALTERNATIVE, GRANT A HEARING ON THE MATTER.

Dated:  October 23, 2019                                  Respectfully Submitted,
                Queens, New York

                                                                   EDWARD ZALOBA, ESQ.,
                                                                   Attorney for Petitioner Nunez
                                                                   118-21 Queens Boulevard, Ste. 504
                                                                   Forest Hills, NY  11375
                                                                   718-261-3000
                                                                   718-793-0385 fax
                                                                   ezalobalaw@aol.com

# TABLE OF EXHIBITS

| | |
|---|---|
| **Exhibit A** | Affidavit in Support of Petition for Writ of Error Coram Nobis |
| **Exhibit B** | Martin Smeling Nunez Certificate of Naturalization |
| **Exhibit C** | Indictment 08 CR 709 |
| **Exhibit D** | Plea Minutes |
| **Exhibit E** | Petitioner's Pre-Sentencing Report (PSR) |
| **Exhibit F** | Nunez Sentencing Minutes |
| **Exhibit G** | Thomas Barra Affirmation |